UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MADISON WARDINGLEY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:22-cv-00115-PPS-JEM |
| ) | |
| ECOVYST CATALYST TECHNOLOGIES, LLC, ) SAFE TRANS, LLC, TRESOR HODARI, and ) COYOTE LOGISTICS, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ECOVYST CATALYST TECHNOLOGIES, LLC, ) | |
| ) | |
| Crossclaim Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SAFE TRANS, LLC, ) | |
| ) | |
| Crossclaim Defendant. ) | |

**PLAINTIFF MADISON WARDINGLEY'S RESPONSE AND OBJECTION TO COYOTE LOGISTICS, LLC'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Comes now, Plaintiff Madison Wardingley, by counsel, and files her Response and Objection to Coyote Logistics, LLC's Motion to Dismiss Count III of Plaintiff's First Amended Complaint for Damages [Dkt. 39].

## I.   INTRODUCTION

Defendant Coyote Logistics, LLC ("Coyote") seeks dismissal of Count III of Plaintiff's First Amended Complaint for Damages pursuant to Federal Rule of Civil Procedure 12(B)(6) arguing that as a transportation broker whose business is to arrange for the transportation of cargo,

it cannot face state tort law liability for negligent selection and control of an inexperienced and unsafe trucking company. Specifically, Coyote contends that the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 1450(c)(1) expressly exempts it from state common law tort standards because such laws have an effect on the prices, routes, and services of freight brokers covered by the FAAAA.

The Court should deny Coyote's motion to dismiss for two reasons. First, personal injury tort law is not sufficiently related to a broker's price, route, or service to be preempted under the FAAAA. Second, personal injury tort law is left to the states' authority to regulate safety, and thus, is expressly protected from preemption by an exception of the FAAAA. As such, Coyote's motion to dismiss should be denied, and Plaintiff should be permitted to pursue her state negligence claims against Coyote.

## II.  FACTS

On July 31, 2021, Plaintiff Madison Wardingley was seriously injured when the vehicle in which she was riding collided with one or more 2800-pound steel containers which suddenly came off a semi-trailer operated by Defendant Tresor Hodari ("Hodari") who was driving for Defendant Safe Trans, LLC ("Safe Trans") on Interstate 80 in Gary, Indiana. (Plaintiff's First Amended Complaint, Dkt. 10, §§ 11, 13, 14-15). The containers were owned by Defendant Ecovyst Catalyst Technologies, LLC ("Ecovyst") and were being transported by Hodari and Safe Trans. (Plaintiff's First Amended Complaint, §§ 18-19). The containers came off the Safe Trans semi-trailer due, in part, due to the negligence of Hodari and Safe Trans in loading, placing, and securing the containers and Ecovyst's instructions to Hodari on loading, placing, and securing the containers. (Plaintiff's First Amended Complaint, §§ 16, 28).

Coyote is a transportation broker that selected Safe Trans as the carrier to transport the Ecovyst containers from Pennsylvania to Colorado for Defendant Ecovyst.  (Plaintiff's First Amended Complaint, § 37).  Defendant Safe Trans and Hodari were not qualified by experience or training to safely place, secure, and transport the Ecovyst containers. (Plaintiff's First Amended Complaint, § 39).   Plaintiff contends that if Coyote had used due diligence in determining the lack of experience and poor safety record of Defendant Safe Trans and/or Defendant Hodari prior to selecting the carrier, it would have discovered that Defendant Safe Trans and Defendant Hodari were not sufficiently experienced to transport the Ecovyst containers.  (Plaintiff's First Amended Complaint, § 39).   Coyote was negligent in its selection of Defendant Safe Trans.  (Plaintiff's First Amended Complaint, § 40).  Coyote exerted substantial control over the details of the work conducted by Defendant Safe Trans and Defendant Hodari and is vicariously liable for the negligence of Defendant Safe Trans and Defendant Hodari. (Plaintiff's First Amended Complaint, § 41).

### III.     ARGUMENT

**A. Standard of Review for a Motion to Dismiss under Rule 12(B)(6)**

When evaluating a motion to dismiss, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016) (citation omitted). Under Federal Rule of Civil Procedure 12(b)(6), the allegations in a complaint must " 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.' " *Id.* at 480 (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). A complaint that offers " 'labels and conclusions' " or " 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of [her] claim that would entitle [her] to the relief requested." *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quotation and citation omitted).

**B. Coyote is not entitled to federal preemption because a state law claim against a freight broker is outside the deregulatory goals of the FAAAA and not preempted.**

**1. The purpose of the FAAAA was to deregulate the trucking industry and not to limit state tort law.**

The FAAAA was enacted to deregulate the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 56 (2013). The FAAAA states:

> "a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."

49 U.S.C. § 14501(c)(1). Congress based Section 14501(c)'s express preemption of certain state regulatory authority over trucking on findings that "the regulation of intrastate transportation of property by the States" had "imposed an unreasonable burden on interstate commerce," "impeded the free flow" of "transportation of interstate commerce," and placed an "unreasonable cost on the American consumers." FAAAA § 601(a)(1), 108 Stat. 1605. In 1978, Congress began to eliminate economic regulation of the transportation industry, beginning with the Airline Deregulation Act of 1978 (the "ADA"). Publ. L. No. 95-504, 92 Stat. 1705. The ADA's aim was to achieve "maximum reliance on competitive market forces." *Id.* at 1706. The ADA included a preemption provision prohibiting States from enacting or enforcing laws "related to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1), "[t]o ensure that the States would not undo federal

deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).

In 1994, Congress found that intrastate regulation of the trucking industry "unreasonably burdened free trade, interstate commerce, and American consumers." *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 440 (2002), and enacted the FAAAA which is modeled after the ADA. Consistent with that intent, the Supreme Court has held that the scope of FAAAA preemption is limited to "state economic regulation," and does not extend to "state safety regulation." *City of Columbus*, 536 U.S. at 440-441.

Relying on the House of Representatives Conference Committee Reports from 1994, the Ninth Circuit has distinguished between the types of laws that Congress intended the FAAAA to preempt versus those that it intended to exempt from the Act's preemptive scope:

> Laws that would be preempted included those imposing "barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport."
>
> Laws escaping preemption included "safety regulations with respect to motor vehicles; laws controlling trucking routes based on vehicle size, weight, and cargo; laws that impose certain insurance, liability, or standard transportation rules; laws that regulate the intrastate transport of household goods and certain aspects of tow truck operations; and laws that create certain uniform cargo or antitrust immunity rules."

*Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014). This list was not intended to be all inclusive, "but merely to specify some of the matters which are not 'prices, rates or services' and which are therefore not preempted." *Id*. The Ninth Circuit accordingly concluded, "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Id*.

Indiana's tort law does not specifically address the trucking industry and does not regulate any price, route, or specific service of a broker. Rather, its touchstone is that every person and

entity must use reasonable care in a given situation. Indiana tort law recognizes a cause of action for negligent selection of an independent contractor. *Bagley v. Insight Communications Co., L.P.* 658 N.E.2d 584 (Ind. 1995). Thus, the legislative intent behind the FAAAA is not served by preemption of tort actions against brokers.

> 2. **Federal preemption is disfavored particularly where the historic police powers of the states such as the health, welfare, and safety of its citizens are implicated.**

In determining whether a state law claim is subject to FAAAA preemption, the Seventh Circuit stated that two requirements must be met: "First, a state must have enacted or attempted to enforce a law. Second, that law must relate to carrier rates, routes, or services 'either by expressly referring to them, or by having a significant economic effect on them.' " *Nationwide Freight Sys., Inc. v. Ill. Commerce Comm'n*, 784 F.3d 367, 373–74 (7th Cir. 2015) (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)). Preemption under the FAAAA is broad and includes "laws and actions having some type of connection with or reference to a carrier's rates, routes, or services, whether direct or indirect." *Id.* at 373. However, state laws are "not preempted where [their] relationship with carrier rates, routes, or services is 'tenuous, remote, or peripheral.' " *Id.* quoting *Dan's City Used Cars*, 569 U.S. at 261.

Further, the Supreme Court has explained, "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("In all pre-emption cases ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (internal quotation marks and citation omitted)). Accordingly, "[i]mposing state tort law liability for negligence ... falls well within the state's historic powers to protect the health, safety, and

property rights of its citizens," *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013).

Congress has the authority to preempt state law through federal legislation by virtue of the Supremacy Clause. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015) (citing U.S. Const. art. VI, cl. 2). Whether Congress has preempted state law is "guided first and foremost by the maxim that 'the purpose of Congress is the ultimate touchstone in every pre-emption case.' " *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 322 (4th Cir. 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 564 (2009)). Nevertheless, preemption is generally disfavored, and courts should "assum[e] that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008) (second alteration in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). This is particularly true "when Congress has legislated in a field traditionally occupied by the States." *Id.*

### 3. The FAAAA does not preempt Plaintiff's state negligence claim against Coyote because it does not relate to a broker's service.

Whether federal preemption applies to negligence actions against transportation brokers is not a settled area of the law, and not a topic touched on at all by either the Seventh Circuit or the Northern or Southern Districts of Indiana. There are cases in which courts have concluded that preemption applies finding such claims relate directly to the services of a broker. (*See* Coyote's Memo, pgs. 12-16). However, the alternative view which is well-supported by the legislative history of the FAAAA and the protections afforded to the historic police powers of the state is that negligent brokering claims do not relate to the services of a broker under the FAAAA because such a claim only requires a broker to act reasonably in making its selection decisions.

This line of reasoning has been followed by several district courts. *See, e.g. Ciotola v. Star Transportation & Trucking*, LLC, 481 F. Supp. 3d 375, 387-388 (M.D. Pa. 2020) (holding that Pennsylvania's common-law duty of ordinary care does not target the prices, routes, or services of a carrier.) *Gilley v. C.H. Robinson Worldwide, Inc.*, 2019 WL 1410902, at *5 (S.D.W. Va. 2019) ("In the present case, plaintiffs' negligent selection claim stems from a personal-injury, wrongful-death action, and the court finds that this claim does not 'relate to' broker services. It affects broker services in 'too tenuous, remote, or peripheral manner,' to fall within the purview of the statutory preemption provision."); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 770 (N.D. Iowa 2019) (holding that a negligent brokering claim is better understood as a law related to "safety" rather than a law related to "service," based on Eighth Circuit precedent interpreting identical language in the ADA); *Nyswaner v. C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892, 896 (D. Ariz. 2019) ("Because this negligent hiring claim is a 'generally applicable state law that does not 'otherwise regulate prices, routes or services,' the Court cannot conclude that it would have a 'significant impact' on [the broker's services]."); *Mann v. C. H. Robinson Worldwide, Inc*., 2017 WL 3191516, at *7 (W.D. Va. July 27, 2017) ("[A] negligent hiring claim as an avenue for imposing liability for an accident does not have anything more than a 'tenuous, remote, or peripheral' connection to the 'price, route, or service' of a broker.").

Additionally, several federal circuit courts hold that the parallel ADA clause does not preempt personal injury claims. As noted by Coyote, it is appropriate for courts to consider case law interpreting the ADA to determine the scope of FAAAA preemption. (*See* Coyote Memo, pg. 8). At least three circuits which have addressed whether the ADA preempts personal injury claims against air carriers and have held that the claims are not preempted. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194-95 (3d Cir. 1998); *Charas v. Trans World Air., Inc.*,

160 F.3d 1259 (9th Cir. 1998); *Hodges v. Delta Airlines, Inc.,* 44F.3d 334 (5th Cir. 1995) and *Smith v. American. W. Air., Inc*., 44 F.3d 344 (5th Cir. 1995)

The courts reason, among other things, that Congress did not intend to preempt "run of-the-mill personal injury claims" and "a common law tort remedy [does not] frustrate deregulation by interfering with competition through public utility-style regulation." *Taj Mahal Travel*, 164 F.3d at 195 (internal citations omitted).

Here, taking guidance from the other circuit court decisions interpreting the similar preemption provisions of the ADA, as well as multiple district court holdings finding that the purpose of the FAAAA is not furthered by limiting state tort law remedies, this Court should conclude that Plaintiff's negligence-based claims against Coyote are not preempted by the FAAAA. Plaintiff's claims are not sufficiently related to the price, route or services provided by Coyote as a transportation broker. Preemption does not apply.

### C. The safety exception to the FAAAA applies and was specifically designed to protect claims like those presented by Plaintiff from preemption.

If the Court were to conclude that tort claims made under Indiana's duty of ordinary care should be deemed to sufficiently "relate to" a broker's price, route and services and thus preempted, the Court should conclude that Plaintiff's claims under Count III of Plaintiff's First Amended Complaint are be saved from preemption by the FAAAA safety exception, joining the vast majority of federal courts who have considered the safety exception in the context of broker liability.

#### 1. The safety exception of the FAAAA should be broadly construed.

The FAAAA includes an exception exempting from preemption state laws related to safety. 49 U.S.C. § 14501(c)(1) provides that the FAAAA preemption provision:

>"shall not restrict the safety regulatory authority of a State with respect to motor vehicles."

The Supreme Court has "held that the safety regulation exception should be broadly construed." *Lopez v. Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 514–15 (N.D. Tex. 2020), citing *City of Columbus,* 536 U.S. at 426. "The Supreme Court has also acknowledged that one of the ways that states have traditionally exercised their police power to regulate safety is through the use of common-law tort liability." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992); *See also, California Tow Truck Ass'n*, 807 F2d at 1022 (citing *City of Columbus,* 536 U.S. at 439 (internal quotation marks omitted)). The Supreme Court rejected a narrow construction of the safety exception in the FAAAA, because Congress's clear purpose with respect to the safety exception was "to ensure that its preemption of States' economic authority over motor carriers of property . . . not restrict the preexisting and traditional state police power over safety." *Id*.

In *Cole v. City of Dallas*, the Fifth Circuit "decline[d] to elasticize Congress's economic goal by narrowly interpreting 'safety regulatory authority of a state with respect to motor vehicles.'" 314 F.3d 730, 733–734 (5th Cir. 2002). State laws are only preempted if they represent an attempt to "hide economic regulation under the guise of safety regulation." *California Tow Truck Ass'n*, 807 F.3d 1022. By contrast, state laws that are "genuinely responsive to safety concerns" fall within the scope of the FAAAA's safety exception. *Id*. *See also Finley v. Dyer*, 2018 WL 5284616, * 6 (N.D. Miss. Oct. 24, 2018)(reasoning "there can be no serious dispute that common law claims arising from the negligent procurement of a trailer represent a valid exercise of the state's police power to regulate safety. Nor can there be any question that such claims, which are centered on a defendant's efforts to place trailers on the highways, concern motor vehicles so as to fall under the exemption provision.").

> **2. The only circuit court decision and the persuasive weight of district court opinions, including district court opinions within the Seventh Circuit, support application of the safety exception to Plaintiff's claims.**

While the Seventh Circuit has not interpreted the safety exception to preemption under the FAAAA in a negligence case against a broker, the Ninth Circuit Court of Appeals has addressed such a claim and determined that the safety exception applies and the United States Supreme Court has recently denied certiorari. *Miller v. C.H. Robinson Worldwide, Inc.*, (9th Cir. 2020), *cert denied*, No. 20-1425 (June 27, 2022).

In *Miller*, in a claim nearly identical to those asserted by Wardingley here, plaintiff contended that a freight broker negligently selected an unsafe motor carrier that caused an accident resulting in injury to the plaintiff. *Miller,* 976 F.3d at 1020. The Ninth Circuit concluded that the safety exception applies because a states' power "plainly includes the ability to regulate safety through common-law tort claims." *Id.* at 1026. As noted, the United States Supreme Court had the opportunity to review the Ninth Circuit opinion in *Miller* but recently denied C.H. Robinson's writ for certiorari, leaving the holding in *Miller* undisturbed.

According to the Ninth Circuit, "the purposes of the FAAAA in general and the safety exception in particular" reveal that " 'the safety regulatory authority of a State' encompasses common-law tort claims":

> [I]n passing the FAAAA, Congress was primarily concerned with the States regulating *economic* aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws. Congress's clear purpose in enacting the safety exception, then, was to ensure that its preemption of States' economic authority over that industry[,] not restrict the states' existing power over safety. That power includes the ability to regulate safety through common-law tort claims.

*Miller*, 976 F.3d at 1026 (emphasis in original).

### 3. Recent district court opinions within the Seventh Circuit conclude that the safety exception applies.

Since the Ninth Circuit's opinion in *Miller*, nearly[1] every district court which has decided whether the safety exception applies to a negligent case against a broker has concluded that the safety exception applies.[2] Included in that list are three district court opinions from Seventh Circuit. Less than a year ago in the southern district of Illinois, in *Crouch v. Taylor Logistics*, the court held on summary judgment that a similar claim against a broker was not preempted due to the FAAAA's safety exception. 563 F.Supp. 868 (S.D. Illinois 2021). Relying on the reasoning of *Miller*, the Court found:

> The undersigned finds the *Miller* Court's analysis persuasive and consistent with Congress' intent that the FAAAA regulate economic activity, not safety. *Id.* 536 U.S. at 439, 122 S.Ct. 2226. Brokers may be required to use ordinary care to vet motor carriers. While that may in turn result in increased costs, Illinois certainly has an interest in regulating the safety of drivers on the road, including trucks. Its negligence laws serve that function by permitting these types of tort actions to proceed….This view aligns with the Seventh Circuit's limited application of complete preemption, which "requires a clear showing of Congressional intent to eliminate state law entirely."

---

[1] The one exception appears to be *Gauthier v. Hard to Stop, LLC*, No.: 6:20-cv-93, 2022 WL 344557 at * 10 (S.D. GA. February 4, 2022). In *Gauthier*, the district court found that the safety exception did not apply without any evaluation of the 9th Circuit's opinion in *Miller*. Notably, the *Gauthier* opinion is currently on appeal to the 11th Circuit. *Gauthier v. Total Quality Logistics, LLC*, filed March 4, 2022.

[2] *Ortiz v. Ben Strong Trucking, Inc.*, 2022 WL 3717217 *11, No. CCB-18-3230, (D. Maryland, August 29, 2022); *Mata v. Allupick, Inc.*, 2022 WL 1541294 * 5, No.: 4:21-cv-00865-ACA, (N.D.Alabama, May 16, 2022); *Taylor v. Sethmar Transportation, Inc.*, 2021 WL 4751419 *13, No. 2:19-cv-00770 (S.D. WV, October 12, 2021); *Gerred v. FedEx Ground Packaging System, Inc.* 2021 WL 4398033 * 3, No. 4:21-cv-1026-P, (N.D. Texas September 23, 2021). *Dixon v. Stone Truck Line, Inc.*, No. 219CV000945JCHGJF, 2021 WL 5493076, at *14 (D.N.M. Nov. 23, 2021; *Bertram v. Progressive Se. Ins. Co.*, No. 2:19-CV-01478, 2021 WL 2955740, at *6 (W.D. La. July 14, 2021); *Popal v. Reliable Cargo Delivery, Inc*., No. P:20-CV-00039-DC, 2021 WL 1100097, at *4 (W.D. Tex. Mar. 10, 2021); *Mendoza v. BSB Transp., Inc.*, No. 4:20 CV 270 CDP, 2020 WL 6270743, at *5 (E.D. Mo. Oct. 26, 2020); *Grant v. Lowe's Home Centers, LLC*, No. CV 5:20-02278-MGL, 2021 WL 288372, at *3 (D.S.C. Jan. 28, 2021); *Stephen Moyer, et al., Plaintiffs, v. Simbad, LLC*, et al., No. 2:20-CV-5405, 2021 WL 1215818, (S.D. Ohio Jan. 12, 2021).

563 F. Supp. 3d at 876 (quoting *Ne. Rural Elect. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 707 F.3d 883, 895 (7th Cir. 2013); *In re Repository Techs., Inc.* 601 F.3d 710, 723 (7th Cir. 2010)).

Also, in *Morrison v. JSK Transport*, the district court denied a broker's motion to dismiss finding that negligence-based claims arising out of motor vehicle accidents fall under the safety exception.  2021 WL 857343, at *4 (S.D. Ill. 2021).  In denying the broker's motion to dismiss, the court observed:

> "True enough, personal injury claims against freight brokers could affect brokers' services: Faced with the threat of civil liability, brokers might be pushed to implement greater safety measures that could raise costs."  However, plaintiff "is not challenging the economic aspects of trucking, like tariffs or price regulation- her negligence claim centers on the safety of motor vehicles on the road at (the broker's) behest."

*Morrison*, 2021 WL 857343, at *3-4.

*See also Montgomery v. Caribe Transport II, LLC*, 2021 WL 4129327, at *3 (finding that FAAAA preemption does not apply due to the safety exception and finding that the State of Illinois has an interest in regulating the safety of drivers on the road and negligence laws served that function by permitting tort actions to proceed).

### 4. Coyote's argument that the Court should ignore the clear majority view on the safety exception relies on theories that have been roundly rejected.

In anticipation of Plaintiff's argument that the safe exception applies, Coyote argues that the exception is intended to ensure that FAAAA preemption does not restrict state police power over safety but does not permit a private action. In advocating that position, Coyote parses the language of the exception relying on the dissenting opinion from *Miller* and citing outdated case law that is inconsistent with the modern and majority view.

In support of its position, Coyote cites primarily *Gillum v. High Standard, LLC* 2020 WL 444371 (W.D. Texas January 27, 2020); *Creagan v. Wal-Mart Transportation, LLC*, 354 F.Supp.3d 808 (W.D. Ohio December 12, 2018) and *Volkova v. C.H. Robinson Company*, 2018 WL 741441 (N.E. Ill. February 7, 2018). Notably, all three of the cases were decided before the Ninth Circuit's holding in *Miller* and the Supreme Court's decision not to review that holding. Moreover, these holdings are in the slim minority of district court opinions that have reviewed the applicability of the safety exception to common law claims against brokers. (*See* Footnote No. 2, *supra*).

> **a. Plaintiff's negligence claims against Coyote arise out of a motor vehicle accident and therefore satisfy the "with respect to motor vehicles" language of the FAAAA safety exception.**

Coyote asserts that negligence claims against brokers do not satisfy the "with respect to motor vehicles" language of the exception. The *Miller* court evaluated that precise argument, finding that negligence claims against brokers arising out of motor vehicle accidents satisfy the "with respect to motor vehicles" language in the statute. *Id.* at 1030. The court explained that "with respect to" is synonymous with "relating to." *Id.* at 1026. Thus, the safety exception in section 14501(c)(2) exempts from preemption safety regulations that have a connection with motor vehicles, whether directly or indirectly. *Id.*

Multiple other courts have come to the same conclusion. *Taylor,* 2021 WL 4751419, at *15-16 (concluding that "with respect to motor vehicles" encompasses indirect safety regulations of motor vehicles, like negligent selection claims that incentivize brokers to select safe and competent motor carriers to drive motor vehicles in the state); *Lopez*, 458 F.Supp.3d at 516 (determining "that a claim seeking damages for personal injury against a broker for negligently placing an unsafe carrier on the highways is a claim that concerns

motor vehicles and their safe operation"); *Finley v. Dyer*, NO. 3:18-CV-78-DMB-JMV, 2018 WL 5284616 at *6 (N.D. Miss. Oct. 24, 2018) (concluding that negligent hiring claims against brokers are centered on brokers' efforts to place trailers on highways, and thus, "concern" motor vehicles so as to fall under safety exemption provision).

Finally, in *Morrison*, the district court referred to the argument asserted by Coyote here that negligence claims do not have the requisite "connection with" motor vehicles as a "half-truth" finding that because brokers contract with third parties to operate motor vehicles, the safety exception applies. *Morrison*, 2021 WL 857343, at * 4.

### b. Regulatory authority includes state common law causes

Coyote also contends that the phrase "regulatory authority" within the safety exception does not include state tort law, citing *Gillum, Creagan* and the dissenting opinion in *Miller*. (*See* Coyote's Memo, pg. 17-19). This position is not the majority view.

Supreme Court precedent holds that "regulatory authority" can encompass more than regulations — specifically, that a state's "regulatory authority" authorizes "other provisions having the force and effect of law," which includes common law claims. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles, CA*, 569 U.S. 641, 650–51, (2013). Many courts have rejected the narrow interpretation of the term "safety regulatory authority" as limited to regulations to the exclusion of common law claims. *See Dixon*, 2021 WL 5493076, at *11. *Uhrhan* v. *B & B Cargo*, 2020 WL 4501104, at *5; *See Lopez,* 458 F. Supp. 3d. at 515. In evaluating the same argument expressed by Coyote here, the *Dixon* court held, citing *Miller*:

> The Court finds the Ninth Circuit's reasoning persuasive. The phrase "safety regulatory authority of a State" is not clear as to Congress's intent. It is not defined in the Act. [*Miller*, 976 F.3d at 1026]. While the term "regulation" arguably could be limited to state regulations, Congress used the phrase "regulatory authority," despite having used the term "regulation" in other provisions of the Act. *Lopez*, 458 F.Supp.3d at 515. Moreover, common law liability has historically "formed the

bedrock of state regulation, and common law tort claims have been described as 'a critical component of the States' traditional ability to protect the health and safety of their citizens.' " *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone.* 505 U.S. at 544 (Blackmun, J., concurring in part and dissenting in part)). Therefore, a reasonable interpretation of "safety regulatory authority of a State" is that it encompasses state common law claims. *See Miller*, 976 F.3d at 1026; *Lopez*, 458 F.Supp.3d at 515 (viewing as "nondeterminative" the fact that "the enforcement mechanism is private action" because "state common law claims exist by force of state authority"); *Morales v. Redco Transp. Ltd.*, Case No. 5:14-cv-129, 2015 WL 9274068, at *3 (S.D. Tex. Dec. 21, 2015).

*Dixon*, 2021 WL 5493076, at *12.

Here, based on the substantial authority applying the public safety exception in § 14501(c)(2)(A) to personal injury negligence claims against a transportation broker, this Court should likewise conclude that the negligence-based claims alleged by Plaintiff herein fall within the FAAAA's public safety exception and are not preempted.

## IV.   CONCLUSION

Plaintiff's negligence claims against Coyote are not preempted by the FAAAA. They do not sufficiently relate to the broker's prices, routes, or services to be preempted. Moreover, they fall within the safety exception to preemption. For these reasons, the Court should deny Coyote's motion to dismiss.

Respectfully submitted,

STEPHENSON RIFE LLP

*/s/ Paul T. Belch*
Paul T. Belch Atty. # 18533-49
PaulBelch@SRtrial.com
M. Michael Stephenson Atty. # 1824-73
MikeStephenson@SRTrial.com
Brady J. Rife Atty. # 25378-73
BradyRife@SRTrial.com
*Attorneys for Plaintiff,*
*Madison Wardingley*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 14, 2022, Plaintiff's Response and Objection to Coyote Logistics, LLC's Motion to Dismiss Count III of Plaintiff's First Amended Complaint for Damages was filed with the Clerk of the Court by using the CM/ECF system. Notice of this filing has been sent to the following counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Christopher R. Whitten<br>cwhitten@indycounsel.com<br>Michael T. Terwilliger<br>mterwilliger@indycounsel.com<br>Whitten Law Office<br>*Attorney for Defendants, Safe Trans, LLC and Tresor Hodari* | Scott C. Bentivenga<br>scott.bentivenga@lewisbrisbois.com<br>Corban J. Cavanaugh<br>corban.cavanaugh@lewisbrisbois.com<br>Lewis Brisbois Bisgaard & Smith LLP<br>*Attorney for Defendant, Coyote Logistics, LLC* |
| Joseph L. Pellis, II<br>jpellis@pellislaw.com<br>Joseph E. Hopkins<br>jhopkins@pellislaw.com<br>Michael A. Kozik<br>mkozik@pellislaw.com<br>Pellis Law Group, LLP<br>*Attorney for Defendant, Ecovyst Catalyst Technologies, LLC* | Renea Hooper<br>rhooper@scopelitis.com<br>Scopelitis, Garvin, Light,<br>Hanson & Feary, PC<br>*Attorney for Defendant, Ecovyst Catalyst Technologies, LLC* |

                                            */s/ Paul T. Belch*
                                            M. Michael Stephenson
                                            Brady J. Rife
                                            Paul T. Belch

M. Michael Stephenson
MikeStephenson@SRTrial.com
Brady J. Rife
BradyRife@SRTrial.com
Paul T. Belch
PaulBelch@srtrial.com
Stephenson Rife LLP
2150 Intelliplex Drive, Suite 200
Shelbyville, IN  46176
Telephone: 317-680-2011
Facsimile: 317-680-2012

{02172470-1 }                        17