UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MADISON WARDINGLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:22–CV-115-PPS-JEM |
| | ) | |
| ECOVYST CATALYST | ) | |
| TECHNOLOGIES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**OPINION AND ORDER**

This matter arises from a motor vehicle collision on Interstate 80 near Gary,

Indiana. Plaintiff Madison Wardingley claims that she was seriously injured when the

vehicle in which she was a passenger collided with heavy steel containers that fell from a

truck operated by Safe Trans, LLC, a commercial motor carrier. The containers, in turn,

were owned by Defendant Ecovyst Catalyst Technologies, LLC. As is typical in the

trucking industry, Defendant Coyote Logistics, LLC, a third-party logistics company and

freight broker, arranged for Safe Trans to haul the containers on Ecovyst's behalf.

Wardingley claims each defendant was negligent and their negligence caused her to be

seriously injured. [DE 10 at 4–8.]

Coyote Logistics seeks dismissal arguing that the claims asserted against it, which

sound in negligent selection of Safe Trans and vicarious liability for the alleged

negligence of Safe Trans and its driver, are preempted by the Federal Aviation

Administration Authorization Act (FAAAA). [DE 39; DE 40 at 2.] Because I find that

Wardingley's claims against Coyote Logistics do not effect pricing, rates or services in the trucking industry, they are not preempted by the FAAAA. Coyote Logistics' motion to dismiss will be denied.

### Factual Background

The following facts are drawn from Wardingley's First Amended Complaint, which I accept as true for present purposes. On the evening of July 31, 2021, Wardingley was riding as a passenger in a vehicle on Interstate 80 outside Gary, Indiana, when a semi tractor-trailer owned by Safe Trans ran off the road and struck a barrier wall. [DE 10, ¶¶ 9–12.] A load of steel containers owned by Ecovyst fell off of the truck, landing in the path of the vehicle in which Wardingley was a passenger, and she was injured in the ensuing crash. *Id.*, ¶¶ 13–15. While the tuck driver claims that the load shifted and caused him to run off the road, resulting in the collision with the barrier wall, Wardingley claims that the driver had never before hauled cargo as a commercial motor vehicle driver and the crash was a result of negligence. *See id.*, ¶¶ 12, 16.

Coyote Logistics identified and selected Safe Trans as the carrier to transport the Ecovyst containers. *Id.*, ¶ 37. While Coyote Logistics was obligated to choose a safe motor carrier with appropriate skill and experience carrying cargo like the Ecovyst containers, Wardingley asserts that it failed to exercise due care in its selection of Safe Trans and its driver. *Id.*, ¶¶ 38–39. Had Coyote Logistics exercised due diligence in evaluating the skill, experience, and safety record of Safe Trans prior to selecting the company to transport the goods, it would have found that the company or its driver

were not sufficiently experienced to transport the Ecovyst containers and had previously violated safety rules by improperly securing cargo. *Id.*, ¶ 39.

## Discussion

Under Federal Rule of Civil Procedure 8(a), a complaint is required to contain "a short and plain statement showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in Wardingley's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), her claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility requires a plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions, and unsupported conclusory statements" in

the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

Preemption is an affirmative defense, *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am.*, 697 F.3d 544, 547 (7th Cir. 2012), and the party raising it bears the burden of proof, *Johnson v. Diakon Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *3 (N.D. Ill. Mar. 28, 2018) (citing *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005)). The Seventh Circuit, observing that "plaintiffs have no duty to anticipate affirmative defenses," has held that in most cases, the "more appropriate" procedure to raise the affirmative defense of FAAAA preemption is to file an answer pleading preemption as an affirmative defense and then move for judgment on the pleadings under Rule 12(c). *S.C. Johnson & Son, Inc.*, 697 F.3d at 547; *Johnson*, 2018 WL 1519157, at *3 (citations omitted). But practically speaking, such motions are evaluated under the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). And because I have before me all that is "needed in order to be able to rule on the defense," the procedural defect is "of no consequence," *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010), so I will turn to the substance of the parties' briefing notwithstanding the hiccup in the procedural posture.

Coyote Logistics contends that Wardingley's state law claims must be dismissed because they are preempted by the FAAAA. The FAAAA was designed by Congress to untangle a web of state laws and regulations affecting the trucking industry and create a more uniform (and federal) paradigm. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002)

4

(noting that intrastate regulation of trucking services had "unreasonably burdened free trade, interstate commerce, and American consumers"). As the Seventh Circuit has stated, "Congress enacted the FAAAA's preemption provision in 1994 with the aim of eliminating the patchwork of state regulation of motor carriers that persisted fourteen years after it had first attempted to deregulate the trucking industry." *Nationwide Freight Sys., Inc. v. Illinois Commerce Comm'n*, 784 F.3d 367, 373 (7th Cir 2015) (citations omitted).

The Act's general preemption provision prohibits a state from enacting or enforcing a:

> [L]aw, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). For starters, reasonable people may wonder whether state tort claims are even implicated by this preemption provision. They are. So held the Supreme Court in *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014).[1] *See also Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, Nos. 10-C-1058 & 10-C-0156, 2012 WL 1910076, at *2 (E.D. Wis. May 28, 2012) (collecting cases).

The statute's plain terms cover any state laws (including common law claims) related to prices, routes, or services of a motor carrier, motor private carrier, *broker*, or freight forwarder. And the term "transportation" for purposes of the FAAAA is broadly

---

[1] Case law interpreting an identical preemption provision codified in the Airline Deregulation Act (ADA) lends weight to my analysis of the FAAAA. "[T]he Supreme Court has generally taken the position that the statutes deregulating the airline industry and those deregulating the trucking industry should be construed consistently with one another." *S.C. Johnson & Son, Inc.*, 697 F.3d at 548; *see also id.* at 549–52 (construing key Supreme Court authorities). *See generally Rowe*, 552 U.S. at 367–70.

defined as services related to the movement of persons or property, including

"arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing,

ventilation, storage, handling, packing, unpacking, and interchange of passengers and

property." 49 U.S.C. § 13102(23). Thus, my task is to determine whether run-of-the-mill

Indiana state negligence claims like the one brought here are "related to a price, route,

or service" of Coyote Logistics as a commercial freight broker.

The parties acknowledge that neither the Seventh Circuit nor the Supreme Court

has precisely delineated the scope of FAAAA preemption with respect to personal

injury negligence claims asserted against freight brokers. Review of the relevant case

law uncovers a range of interpretive approaches adopted by the lower courts. Indeed,

"district courts are sharply divided" on the question whether "personal injury claims

alleging negligence by brokers in selecting motor carriers" are preempted by the

FAAAA. *Loyd v. Salazar*, 416 F. Supp. 3d 1290, 1296–98 (W.D. Okla. 2019) (collecting

cases). I am guided, but not bound, by the persuasive weight of decisions evaluating

whether similar tort claims against motor carriers and commercial freight brokers are

preempted by the FAAAA. These decisions fall into two general camps.

On one hand, I was surprised to see that a line of cases has concluded that the

FAAAA's "related to" language broadly preempts state laws that have an economic

impact on prices, routes, and services of covered entities in the trucking industry. From

this angle, several courts have dismissed state common law claims, including claims

against brokers for the negligent selection of motor carriers, as preempted by the Act.

*See, e.g., Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *3–5 (S.D. Tex. Jan. 27, 2020); *Loyd*, 416 F. Supp. 3d at 1298; *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018)*; Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441, at *4 (N.D. Ill. Feb. 7, 2018)*; Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857, at *3–4 (N.D. Ill. Oct. 26, 2017)**.**

On the other hand, several courts have held that state tort laws are too far removed from carriers' and brokers' prices, routes, and services to be expressly preempted by the FAAAA. *See, e.g., Ciotola v. Star Trans. & Trucking, LLC*, 481 F. Supp. 3d 375, 387–88 (M.D. Pa. 2020); *Nyswaner v. C.H. Robinson Worldwide, Inc.*, 353 F. Supp. 3d 892, 896 (D. Ariz. 2019); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769–70 (N.D. Iowa 2019); *Gilley v. C.H. Robinson Worldwide, Inc.*, No. 1:18-00538, 2019 WL 1410902, at *5–6 (S.D.W. Va. 2019); *Mann v. C.H. Robinson Worldwide, Inc.*, Nos. 16 C 102, 16 C 104 & 16 C 140, 2017 WL 3191516, at *7–8 (W.D. Va. July 27, 2017). Other courts, too, have rejected federal preemption of plaintiffs' tort claims based on language in a separate subsection of the FAAAA that expressly carves out state safety regulations from the preemptive scope of the Act (the so-called "safety exception"). *See, e.g., Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1026–31 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 2866, 2022 WL 2295168 (June 27, 2022); *Crouch v. Taylor Logistics Co.*, 563 F. Supp. 3d 868, 876 (S.D. Ill. 2021); *Montgomery v. Caribe Transp. II, LLC*, No. 19-CV-1300-SMY, 2021 WL 4129327, at *2–3 (S.D. Ill. Sept. 9, 2021); *accord Finley v. Dyer*, No. 3:18-CV-78-DMB-JMV, 2018 WL 5284616, at *6 (N.D. Miss. Oct. 24, 2018).

Coyote Logistics urges me to adopt the former approach. For her part, Wardingley raises both sets of countervailing arguments against preemption — state negligence law falls outside the scope of the general preemption provision, and in any case falls within the safety exception. I will consider both in turn.

### 1.    The FAAAA Does Not Preempt Wardingley's Negligence Claims

The lion's share of the parties' briefing parses seven words: "related to a price, route, or service." 49 U.S.C. § 14501(c)(1). Before diving into whether (and what types of) state laws—or state tort claims—are "related to brokers' prices, routes, or services," it is useful to consider some generally acknowledged principles about the FAAAA.

The Seventh Circuit has endorsed a broad construction of the phrase "related to" as preempting any "laws or actions having some type of connection with or reference to a [broker's] rates, routes, or services, whether direct *or indirect*." *Nationwide Freight*, 784 F.3d at 373 (emphasis added). However, in keeping with Supreme Court guidance that "the breadth of the words 'related to' does not mean the sky is the limit," state laws with only "a tenuous, remote, or peripheral" relationship to rates, routes, or services are not preempted. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260–61 (2013); *Nationwide Freight*, 784 F.3d at 373. Put succinctly, to trigger FAAAA preemption in this circuit, (1) "a state must have enacted or attempted to enforce a law," and (2) that law must relate to a broker's "rates, routes, or services 'either by expressly referring to them, or by having a significant economic effect on them." *Nationwide Freight*, 784 F.3d at 373–74 (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423,

1432 (7th Cir. 1996)).

As previously noted, I can set aside the first issue because state common-law actions qualify as "other provision[s] having the force and effect of law" under the FAAAA. *Northwest, Inc.*, 572 U.S. at 284; *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000); *Non Typical, Inc.*, 2012 WL 1910076, at *2 (collecting cases). Therefore, the second issue—whether the state law relates to rates, routes or services—is where the rubber meets the road. As the Supreme Court put it, "[s]ome state actions may affect [rates] in too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 390 (1992). The Seventh Circuit has construed this language to entail that a court "must decide whether the state law at issue falls on the affirmative or negative side of the preemption line." *S.C. Johnson & Son, Inc.*, 697 F.3d at 550. This isn't a particularly helpful description of how I am to go about answering the question. And indeed, I suppose the lack of guidance from higher courts on the issue of whether state negligence claims are preempted is what has led to the depth of the disagreement by various judges around the country on the preemption issue.

Here's my best analysis of the issue: Evaluating a statute's preemptive effect is ultimately an exercise "guided by the rule that the purpose of Congress is the ultimate touchstone in every preemption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal quotations and citation omitted). I am "mindful of the adage that Congress does not cavalierly preempt state law causes of action." *Montalvo v. Spirit Airlines*, 508

9

F.3d 464, 471 (9th Cir. 2007). As the Supreme Court explained long ago, where "Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct," that adage is of particular import. *United Const. Workers v. Laburnum Const. Corp.*, 347 U.S. 656, 663–64 (1954).

Let's not beat around the bush: the upshot, if Coyote Logistics is right about the preemption issue, is that Ms. Wardingley will be left holding the bag and the tortfeasor will go about his merry way free to harm someone else. In other words, the injured party is deprived of its property without recourse or compensation, and the tortfeasor is granted "immunity from liability for their tortious conduct." *Id.* Frankly, it's a little hard to swallow the proposition that Congress intended such a result by displacing all state negligence claims against trucking companies through the passage of the FAAAA just because an adverse verdict against a trucking (or brokerage) company could conceivably effect cartage prices in some remote way.

Coyote Logistics claims I shouldn't be so skeptical. They tell me that the negligence claims asserted against it "go to the heart of its business" and services—arranging for the transportation of property by carriers like Safe Trans as a federally licensed freight broker—and Wardingley's allegations reveal that she seeks "to use Indiana tort law to determine and control [its] services as a broker." [DE 40 at 11.] Complying with a reasonable duty of care in its selection of motor carriers to safely and securely transport cargo across the country, Coyote Logistics argues, will require it

to incur "additional burden and expense of complying with the patchwork of tort laws of the fifty states, which is exactly what Congress intended to avoid in enacting the preemption provision." *Id.*

From one angle, Coyote Logistics' argument has a superficial appeal. It is reasonable to think that imposing a duty of reasonable care in the selection of motor carriers entails meaningful economic effects on their services. Freight brokers may have to undertake additional measures to vet carriers, and these measures, in turn, will presumably raise their costs of production (and potentially their prices). But from an economic point of view, the argument cuts both ways. An equally reasonable view is that negligence in the selection of motor carriers itself "operates as a privately-imposed transaction cost on the affected sale." *Cf. S.C. Johnson & Son, Inc.*, 697 F.3d at 559 (citations omitted) (holding that enforcement of state anti-bribery (and more generally anti-corruption) laws is too tenuously related to the regulation of the rates, routes, and services in the trucking industry to fall within the FAAAA's preemption rule). Put differently, state regulation of commercial freight brokers' negligence in the selection of motor carriers "is an attempt to lift this 'tax' from the shoulders of its consumers"—making "market pricing mechanisms work *more efficiently*—not less." *Id.* (emphasis added). It would thus seem odd to bar enforcement of such laws based on concerns about a spiral of competing state regulations *increasing* transaction costs in the trucking industry.

As the citations set out above show [*see supra* at 6–8], a considerable amount of

ink has been spilled over whether personal injury plaintiffs like Wardingley may

proceed with negligence claims against freight brokers. On balance, I find more

persuasive the line of recent decisions finding that such claims fall outside the

FAAAA's preemption provision.[2] Simply put, I remain dubious that Congress, in its

mission to unencumber the interstate trucking industry from a patchwork of state

tariffs, price controls, and similar economic regulations, also aimed to completely

unyoke trucking companies and freight brokers from commonsense standards of care

enforced through private tort actions. *See Dilts v. Penske Logistics, LLC*, 769 F.3d 637,

644–45 (9th Cir. 2014). It goes without saying that the law of negligence is not specific to

the trucking industry. Indiana's common-law duty of ordinary care does not mention or

target a freight broker's prices, routes, or services. *Accord Ciotola*, 481 F. Supp. 3d at 388

(evaluating Pennsylvania negligence law). It applies across industries and walks of life.

And, where the law of negligence applies, it's easy enough to comply—just act

reasonably.

Notably, a number of courts have long held that personal injury claims stemming

from negligence are not preempted by the identical preemption provision applicable to

the airline industry. *See Scott*, 372 F. Supp. 3d at 769 (citing *Charas v. Trans World

Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998); *Hodges v. Delta Airlines*, Inc., 44 F.3d 334

(5th Cir. 1995) (en banc); *see also Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 346 (5th Cir.

---

[2] To be sure, others have viewed the issue differently. At the same time, this view draws substantial support from the decisions of several lower courts considering similar arguments.

1995) (en banc) ("Neither the language nor history of the ADA implies that Congress was attempting to displace state personal injury tort law concerning the safety of the airline business."). This reasoning has equal application to covered entities in the trucking industry. *See Scott*, 372 F. Supp. 3d at 769. Lending from earlier ADA cases, several courts have concluded that personal injury negligence claims are not barred by the FAAAA. *See, e.g., Ciotola*, 481 F. Supp. 3d at 390 (holding that "although Pennsylvania's tort law may have some negative financial consequences for a broker or carrier, it is not preempted by the FAAAA. Pennsylvania's tort law is a part of the backdrop of laws that all businesses must follow"); *Owens v. Anthony*, No. 2-11-0033, 2011 WL 6056409, at *3 (M.D. Tenn. Dec. 6, 2011) (collecting and applying ADA precedents to FAAAA's identical language).

In sum, based on the foregoing authorities, I find that the FAAAA does not preempt Wardingley's personal injury negligence claims against Coyote Logistics sounding in vicarious liability and negligent selection of Safe Trans and its driver.

**2.      Wardingley's Claims Fall Within the FAAAA's Safety Exception**

Wardingley's claims are not preempted under the FAAAA for an independent reason—they fall within what courts have referred to as the "safety exception." Notwithstanding the general provisions in § 14501(c)(1), the Act:

> [S]hall not restrict the safety regulatory authority of a State with respect to motor vehicles*, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance

authorization.

49 U.S.C. § 14501(c)(2)(A) (emphasis added). In recent years, following the Ninth Circuit's analysis in *Miller v. C.H. Robinson Worldwide, Inc.*, several lower courts have interpreted this language to spare state common law claims asserted against freight brokers from FAAAA preemption. 976 F.3d at 1026–31; *see, e.g., Crouch*, 563 F. Supp. 3d at 876; *Montgomery*, 2021 WL 4129327, at *2–3; *Finley*, 2018 WL 5284616, at *5.

In *Miller*, the plaintiff claimed that a freight broker negligently hired an unsafe motor carrier, who caused an accident resulting in the plaintiff's bodily injury. 976 F.3d at 1020. The court determined that selection of a motor carrier strikes at the core function of a broker and while state negligence laws do not specifically dictate brokers' services, they nevertheless impose "an obligation on brokers at the point at which they arrange for transportation by [a] motor carrier," and thus "related to" brokers' services. *Id.* at 1024–25. At the same time, the court found that the claims were saved by the safety exception, since under the Act states retain power to "regulate safety through common-law tort claims." *Id.* at 1026. The balance of lower court decisions following *Miller*, including those of a handful of lower courts in the Seventh Circuit, have adopted the second prong of *Miller*. [*See* DE 45 at 12–13 & n.2 (collecting cases).]

I find the second prong of *Miller*'s analysis persuasive and consistent with the legislative intent underlying the FAAAA: namely, to preempt price and service regulations dictating the economics of the interstate tucking and freight brokering markets, not safety, the traditional ambit of state governments. States have a safety

14

interest in private tort actions, like Wardingley's here, which serve to regulate the safety of roadways. As the Ninth Circuit correctly observed, the FAAAA's legislative history is devoid of any suggestion that "Congress intended to eliminate this important component of the States' power over safety." *See* 976 F.3d at 1022–23, 1026; *accord City of Columbus*, 536 U.S. at 439 ("Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety.").

Coyote Logistics retorts that the language of the safety exception is "much more narrow" than elucidated in *Miller*, and simply does not apply to common law claims against freight brokers. [*See* DE 49 at 8.] Admittedly, the plain language of the exception does not mention common law tort claims or brokers' services in selecting motor carriers, whereas the words "law" and "broker" are expressly included in the general preemption provision. *Compare* 49 U.S.C. § 14501(c)(2)(A), *with* § 14501(c)(1). The exception says that it applies to "the safety regulatory authority of a State with respect to motor vehicles," and Coyote Logistics notes that brokers are not directly responsible for loading, operating, or maintaining motor vehicles. Coyote Logistics also relies on case law suggesting that the phrase "regulatory authority" does not "permit a private right of action" or extend to state common law claims. [DE 40 at 16–17 (citing *Gillum*, 2020 WL 444371, at *12).] These arguments all press a reasonable, alternative interpretation of the scope of the phrase "the safety regulatory authority of a State with

15

respect to motor vehicles." Ultimately, however, I am guided by *Miller*'s persuasive

reading of the FAAAA's legislative history, *see* 976 F.3d at 1022–23, 1026–27, along with

the Seventh Circuit's admonition that state law should be completely preempted "only

where Congress clearly intended to replace state law with federal law and create a

federal forum," *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010). Thus, for

this independent reason, Wardingley's claims are not preempted by the FAAAA.

## Conclusion

For the foregoing reasons, Defendant Coyote Logistics, LLC's Motion to Dismiss

Count III of Plaintiff's First Amended Complaint [DE 39] is **DENIED**.

**SO ORDERED.**

ENTERED: November 4, 2022.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT